GASTON-LINCOLN TRANSIT, INC. v. MARYLAND CASUALTY
COMPANY

No. 7327SC715

(Filed 19 December 1973)

1. Insurance § 2; Principal and Agent § 5— insurance agent — apparent
   authority to bind insurer

   Although an insurer may have instructed its agencies that certain
   risks were to be submitted to the insurer prior to binding by the
   agency, an agency had apparent authority to bind the insurer to cover-
   age of insured's buses in a renewal policy and to waive provisions of
   a rider limiting coverage of the buses where insured's negotiations in
   prior years had been with the agency and insured had no knowledge
   that the agency did not have authority to bind the insurer.

2. Insurance § 10— renewal policy — provision not contained in previous
   policies — notice to insured

   The trial court did not err in reforming a renewal insurance con-
   tract covering the insured's buses by deleting therefrom an endorse-
   ment limiting coverage of the buses to a specified radius from their
   principal place of garaging where the limitation was not contained
   in prior contracts and was added by the insurer to the renewal con-
   tract without notice to the insured.

3. Insurance § 10— renewal policy — change in coverage — notice to in-
   sured

   An insured has a right to expect that the coverage of a renewal
   insurance policy will be substantially the same as that afforded by the
   prior policy absent notice to the contrary; if the insurer without notice
   inserts an endorsement varying the original coverage, the renewal
   contract may be reformed to conform with the terms of the prior
   policy and recovery may be had in that same action by the insured
   under the renewal contract as reformed.

4. Insurance § 10— reformation of policy — extension of coverage — addi-
   tional premiums

   In an action in which the trial court reformed a renewal insurance
   contract by deleting an endorsement limiting coverage of insured's
   buses to a specified radius from their principal place of garaging, the
   insurer was not entitled to an additional premium for the expanded
   coverage where the insurer, through its agent, was aware of the scope
   of insured's bus operations and the course of dealing between the
   parties was directed at coverage of the entire bus operation at the
   rates agreed upon.

APPEAL from McLean, Judge, 7 May 1973 Session of GAS-
TON Superior Court.

Plaintiff is a bus company with is principal office in Gas-
tonia, North Carolina. Its buses were insured from 1966 to

1971 by defendant, a Maryland corporation doing business in North Carolina through its authorized agent the George A. Jenkins Agency, Inc., of Gastonia. The present action was instituted to reform the insurance contract covering the buses to delete therefrom an endorsement limiting coverage of insured buses to a specified radius of their principal place of garaging.

The plaintiff owned a 1956 GMC bus which was included in the coverage afforded by the policy issued by defendant. On 5 July 1971, this bus, while in Louisville, Kentucky, burned without fault on the part of the plaintiff. Defendant concedes that the bus was included in the coverage of the policy, that it burned through no fault of the plaintiff, and that it was damaged in the amount of $10,000.

The dispute between plaintiff and defendant concerns an endorsement allegedly attached to the policy limiting the coverage of some buses to a radius of 50 miles and others to a radius of 150 miles from their principal place of garaging. Louisville, Kentucky, is more than 150 miles from Gastonia.

The evidence presented by the parties tended to show the following:

The parties had begun their relation as an insurer and insured in 1964, and since 1966 defendant has issued through the George A. Jenkins Agency, Inc., renewal policies. The term of each policy coincided with the calendar year, and plaintiff introduced the following numbered policies into evidence:

2-3662696 (31 December 1967 — 31 December 1968)
2-3785758 (31 December 1968 — 31 December 1969)
2-3895407 (31 December 1969 — 31 December 1970)
2-3953208 (31 December 1970 — 31 December 1971)

Each policy stated on its face that it was a renewal of the policy for the preceding year.

Following the burning of the bus, William Ray Rhyne, Jr., —Vice President and Controller of plaintiff—notified George A. Jenkins, Jr., of the fire. An appraisal of the damage was made within 48 hours, and Mr. Rhyne was informed by Mr. Jenkins that defendant denied the claim and would not pay it because of a rider imposing a mileage limitation on the use of the buses. Rhyne thereupon examined the policy in effect—2-3953208—and saw the rider for the first time.

Rhyne further testified that he first became Controller of plaintiff in November, 1966, and shortly thereafter he had occasion to examine in detail the policy effective 31 December 1966—31 December 1967. There was no limitation regarding mileage in that policy. In each succeeding year, Rhyne met with Jenkins regarding the renewal of the insurance policies, and while they discussed the bus schedules for the coming year, they did not "go over" the policies.

Defendant contends that the rider—entitled Auto 1145—was inserted into policy 2-3895407 when it was initially issued. There is in fact no evidence as to whether the rider was in the policy as issued or inserted later. There is likewise no evidence that plaintiff was ever notified by defendant of the insertion of the rider with its territorial limitation.

The trial court sitting without a jury made, *inter alia,* the following findings of fact:

"10. That defendant, not its agent in Gastonia, inserted in renewal policy 2-3895407 which covered the period of December 31, 1969, through December 31, 1970, an endorsement entitled 'Auto 1145'. That the renewal policy numbered 2-3953208 covering the period of plaintiff's loss contained an identical endorsement entitled 'Auto 1145.'

\*       \*       \*

14. That the George A. Jenkins Agency, Inc., had not at any time given to plaintiff any notice or information as to the insertion of said 'Auto 1145' endorsement into the renewal policy nor did the defendant itself give any written or verbal notice of the insertion of said endorsement into said policy at any time prior to the loss sustained by plaintiff.

\*       \*       \*

19. That defendant deliberately and intentionally inserted its endorsement 'Auto 1145' in its renewal policy in the year preceding the policy period in which plaintiff's loss occurred without giving any notice thereof to plaintiff or to its agent, the George A. Jenkins Agency, Inc., and neither defendant nor its said agent ever gave any notice to plaintiff of the attaching of said endorsement to said renewal policies.

20. That defendant's agent, George A. Jenkins, and the George A. Jenkins Agency knew that the plaintiff was en-

gaged in the operation of a charter bus business and that it regularly transported passengers in the operation of its charter business for many miles beyond 150 miles of Gastonia, North Carolina. That, in fact, defendant's agent, George A. Jenkins, had been a party to charter trips to Raleigh, North Carolina, on several occasions and knew that the distance between Gastonia and Raleigh exceeded 150 miles.

\*　　\*　　\*

25. That the defendant's conduct in inserting endorsement 'Auto 1145' in the renewal policies in which said endorsement appears constitutes inequitable conduct on defendant's part, and the defendant had a duty to notify plaintiff of any alteration or change of coverage in any renewal policy at the time of its issuance.

26. That the defendant's agents were fully informed as to the nature of the business of the plaintiff and the territorial scope of its operations of its buses and unjustly altered the renewal policies notwithstanding said knowledge and information.

27. Plaintiff had a right under the circumstances shown by the evidence in this action to assume that the defendant would renew the policies of insurance here in question on the same terms as in the original policy and that the renewals would provide the same coverage as before.

28. That by inserting endorsement 'Auto 1145' in the renewal policy without notice to plaintiff the defendant materially changed the insurance coverage purchased by plaintiff and plaintiff is entitled to have the renewal policies reformed to conform to the prior and original policy which did not contain said endorsement.

29. Defendant in this case, upon the expiration of the policy period in the original policy simply sent a renewal policy to plaintiff and the insured could not reasonably have been expected to read it over again and was entitled to assume that the terms and conditions set forth in said renewal policies remained the same as in the former policy and that the coverage had not been changed.

30. That defendant by its conduct and the conduct of its agents waived, and are estopped, to rely on the provisions

of endorsement 'Auto 1145' in its renewal policies relating to the territorial operation by plaintiff of its buses insured under said policies of insurance.

\*     \*     \*

33. That defendant and its agents had a duty to speak and advise plaintiff of any change of coverage upon issuance of a renewal policy of insurance and did not do so. That by its silence the defendant practiced a fraud upon the plaintiff.

34. That plaintiff is entitled to have the renewal policies reformed to comply with the terms and coverage of the policy renewed and without any further assessment of premiums, the defendant has waived any right, if any it ever had, to demand payment of further premiums as a condition to reformation of said contract of insurance.

35. The endorsement of 'Auto 1145' was not in Plaintiff's Exhibit Number 3 (Renewal Policy No. 2-3785758) at the time of delivery of said policy to plaintiff by defendant and its agents, nor was it in said policy at the time it was introduced into evidence in the trial of this action. . . . "

The court thereupon concluded:

"3. That each of the policies of insurance offered in evidence during the trial of this action constituted a renewal of a policy issued to plaintiff and its affiliated companies for the preceding year and each of said policies was designated as a renewal in writing by defendant upon the face of each of said policies. That the terms of the two most recent policies offered into evidence did not legally change the terms of the policies being renewed and did not effectually limit the coverage provided to plaintiff by defendant's policies issued prior to the issuance of Policy No. 2-3895407.

4. That the oral contract between plaintiff and defendant was made solely to renew the policies in existence prior to the issuance of Policy No. 2-3895407 (covering the period of December 31, 1969-70) and there was no evidence of the introduction of any new terms in the two later renewal policies. Said agreements to renew said two later policies necessarily and as a matter of law implied a renewal by the defendant of the identical contract of insurance existing between plaintiff and defendant as set forth in Policy No.

2-3785758 (covering the period of December 31, 1967-68) and prior policies issued by defendant to plaintiff. That defendant had a duty to incorporate in the renewal policies the same insurance coverage as contained in the original policies.

\* \* \*

7. That by its nondisclosure to plaintiff of the insertion of endorsement 'Auto 1145' into the renewal policies at its home office in Baltimore, Maryland, the defendant's conduct was inequitable, unjust and fraudulent.

8. That plaintiff is entitled to a reformation of the insurance policies issued by defendant subsequent to the policy period of December 31, 1968-1969, eliminating the variance between policies issued prior thereto and policies issued by defendant subsequent thereto in such manner as to eliminate from the two later renewal policies the provisions of endorsement 'Auto 1145'. That by reason of said reformation the insurance contract between plaintiff and defendant, as set forth in Policy No. 2-3785758, constitutes the contract under which the defendant's liability to plaintiff is governed and determined."

From the judgment for plaintiff, defendant appeals.

*Basil L. Whitener and Anne M. Lamm for plaintiff appellee.*

*Jones, Hewson, and Woolard, by Harry C. Hewson, for defendant appellant.*

MORRIS, Judge.

[1] Defendant first assigns error to the court's finding that the defendant by its conduct waived and is estopped to rely upon the provisions of the endorsement "Auto 1145." Its first basis for this assignment is its contention that the Jenkins Agency was a limited agency as opposed to an unlimited agency. Specifically, it relies on the portion of its answer to plaintiff's interrogatory excluded by the court, but read into the record. According to this answer, defendant instructed its agencies that any inter-urban buses or frequent trips greater than 150 miles represented greater than normal risks and as such they were to be submitted to defendant for approval prior to binding by the agent. Thus, contends defendant, since the Jen-

kins Agency had no authority to bind the defendant to this risk, it had no authority to waive the provision.

We cannot sustain this contention. "Although an agent be authorized to act in a limited capacity, yet if he has apparent authority to represent the company in relation to fixing rates of premiums, and does so, the company is bound thereby, unless the assured has knowledge of the agent's limited powers." Joyce, 2d, Insurance, § 551; *Perkins v. Washington Insurance Co.*, 4 Cow. 645 (N.Y. 1825). There was evidence that Rhyne and Jenkins met annually and discussed the bus schedules and market value of the buses. "Where a principal objects to the act of his agent, as unauthorized, the question is, not what power did he intend to give his agent, but what power the third person who dealt with the agent, and who insists on his acts as valid, had a right to infer that he possessed, from his own acts and those of his principal." *Perkins v. Washington Insurance Co.*, *supra*, at 645. There is no evidence that Rhyne—or anyone associated with plaintiff—knew that the Jenkins Agency had no authority to bind defendant in regard to rates. All of plaintiff's prior insurance negotiations had been with the Jenkins Agency, not with the defendant itself. Thus, plaintiff was justified in the belief that the Agency could bind the defendant, and defendant cannot now deny the authority of the Agency to bind defendant or to waive the provisions of the rider.

[2] Defendant's second assignment of error is to the court's reforming policies 2-3895407 and 2-3953208 by deleting "Auto 1145" on the ground it was not contained in the preceding policy, and therefore plaintiff had no notice thereof. We do not agree.

There appears to be no definitive case in North Carolina on the reformation of renewal contracts of insurance wherein the insurer has inserted a rider without notification. However, the overwhelming weight of authority in the United States is diametrically opposed to defendant's position.

"Generally, an insured in renewing his policy may rely upon the assumption that the renewal will be upon the same terms and conditions as the earlier policy, and therefore he is not bound by a reduction in the renewal policy where the change was not called to his attention at the time of the renewal. The usual remedy of the insured who, after sustaining a loss, discovers that he is not covered under his renewal policy because of some restriction or warranty not

in the earlier policy, or because of a reduction in coverage from the earlier policy, is to seek reformation of the renewal policy and, often in the same action, a recovery thereon as reformed, for the basic theory behind the rule which holds the insurer bound by the greater coverage in the earlier policy is that if an insurance company knows that the renewal policy differs and does not inform the insured, it is guilty of fraud or unequitable conduct, or that if it does not know, it is because of a mistake, and in either event the insured, who has relied on the assumption that he is receiving a policy based on the same terms and conditions as the earlier one, is entitled to recover as though there had not been a change in the coverage in the renewal policy.

As is the rule with contracts generally, the mere failure of an insured to read the policy does not necessarily prevent his seeking reformation thereon and all the more so when there is involved a renewal of a policy wherein the insurer has reduced the coverage without notice to the insured, for the insured has a right to rely on the assumption that the renewal policy will contain the same terms and conditions as the earlier policy." Annot., 91 A.L.R. 2d 546, 549 (1963).

"By the renewal of a policy, except where there is a special agreement for different terms, the original policy is continued under the original stipulations, and the only change is in the time of its expiration, it certainly being in harmony with the reasonable intent of the parties that where an insurer agrees to renew a policy, the insured should have a right to expect that the new protection will be in substance the same as that afforded by the former contract and upon the same conditions. This is especially true, not only where the insured specifically requests the insurer to issue a policy like the previous one, but also where it is understood that the two policies are to be the same, as well as where the original policy expressly so provides, and the agreement to renew is made shortly before the expiration of the original policy, and the renewal premium is paid, or agreed to be paid." 17 Couch 2d, Insurance, § 68:60.

[3]   Although—as we have noted—there is no definitive North Carolina case on the specific point of law in question, the above line of authority was approved by the Supreme Court, per

Justice Sharp in *Setzer v. Insurance Co.*, 257 N.C. 396, 126 S.E. 2d 135 (1962). We, therefore, hold that in the renewal of an insurance contract, absent notice to the contrary, the insured has a right to expect that the coverage of the new policy will be substantially the same as that afforded by its predecessor. If, absent notice to the contrary, the insurer inserts an endorsement varying the original coverage, the renewal contract may be reformed to conform with the terms of the prior policy. Recovery may be had in that same action by the insured under the renewal contract as reformed.

[4] Defendant's final assignment of error is to the trial court's failure to require an additional premium which would be due for the expanded coverage. Inasmuch as this assignment of error is based upon defendant's exception to the court's finding that defendant by its conduct has waived the right to demand further premium, it is without merit. Where jury trial is waived, the court's findings of fact are conclusive if supported by competent evidence and judgment will be affirmed on appeal. *Nichols v. Insurance Co.*, 12 N.C. App. 116, 182 S.E. 2d 585 (1971). There is ample evidence in the record that defendant through its agent, the George A. Jenkins Agency, Inc., was aware of the scope of plaintiff's bus operations. There is also competent evidence that the course of dealings between the parties was directed at coverage of the entire bus operation at the rates agreed upon. Defendant cannot now be awarded additional premiums.

No error.

Chief Judge BROCK and Judge BRITT concur.